FILED
CLERK, U.S. DISTRICT COURT

OCT 2 9 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

WILLIE LEE MITCHELL JR.,

        Petitioner,

    v.

URIBE DOMINGO JR., Warden,

        Respondent.

NO. CV 09-7687-AG(E)

ORDER ADOPTING FINDINGS,

CONCLUSIONS AND RECOMMENDATIONS

OF UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. section 636, the Court has reviewed the Petition, all of the records herein and the attached Report and Recommendation of United States Magistrate Judge. The Court approves and adopts the Magistrate Judge's Report and Recommendation.

IT IS ORDERED that Judgment be entered denying and dismissing the Petition with prejudice.

///

///

///

///

1    IT IS FURTHER ORDERED that the Clerk serve copies of this Order,

2 the Magistrate Judge's Report and Recommendation and the Judgment

3 herein by United States mail on Petitioner and counsel for

4 Respondent.

5

6    LET JUDGMENT BE ENTERED ACCORDINGLY.

7

8    DATED: October 29          , 2010.

9

10

11                                    _____

12                          ANDREW J. GUILFORD
                            UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  WILLIE LEE MITCHELL JR.,        )   NO. CV 09-7687-AG(E)
                                    )
12                 Petitioner,      )
                                    )
13        v.                        )   REPORT AND RECOMMENDATION OF
                                    )
14  URIBE DOMINGO JR., Warden,      )   UNITED STATES MAGISTRATE JUDGE
                                    )
15                 Respondent.      )
    _____)

16

17

18       This Report and Recommendation is submitted to the Honorable

19  Andrew J. Guilford, United States District Judge, pursuant to

20  28 U.S.C. section 636 and General Order 05-07 of the United States

21  District Court for the Central District of California.

22

23                          PROCEEDINGS

24

25       On October 22, 2009, Petitioner filed a "Petition for Writ of

26  Habeas Corpus By a Person in State Custody."  On December 2, 2009, the

27  Court dismissed this initial petition with leave to amend.

28  ///

1  On January 4, 2010, Petitioner filed a "First Amended Petition"

2  ("the Petition").  On June 2, 2010, Respondent filed an Answer.

3  Petitioner did not file a Reply within the allotted time.

4

5                                **BACKGROUND**

6

7  A jury found Petitioner guilty of, <u>inter alia</u>, burglary and grand

8  theft (Reporter's Transcript ("R.T.") 952-57).  Petitioner received a

9  sentence of nine years in prison (R.T. 5157-58).  The Court of Appeal

10  affirmed (Lodged Document 6).  The California Supreme Court denied

11  Petitioner's petition for review (Lodged Document 10).  The California

12  Court of Appeal and the California Supreme Court also denied

13  Petitioner's various petitions for collateral review (Lodged Documents

14  14, 17, 19).

15

16                          **SUMMARY OF TRIAL EVIDENCE**

17

18  The following summary is taken from the opinion of the California

19  Court of Appeal in <u>People v. Mitchell</u>, 2008 WL 4882588 (Cal. App.

20  Nov. 13, 2008).  <u>See</u> <u>Slovik v. Yates</u>, 556 F.3d 747, 749 n.1 (9th Cir.

21  2009) (taking factual summary from state appellate decision).

22

23  Bonnie Naruo worked as the office manager at Foogert's

24  Tire and Auto Service located on Sepulveda Boulevard in

25  Culver City.  Sometime around 8:00 a.m. on August 2, 2005,

26  she saw defendant on the sidewalk outside the shop.

27  Defendant waved and said "Hi."  Shortly thereafter, Michael

28  Nani, a mechanic at Foogert's who was arriving at work, saw

1  defendant coming out of one of the service bays in the rear

2  of the repair shop carrying what appeared to be a large

3  suitcase and another object.

4

5  Nani confronted defendant on Sepulveda Boulevard and asked,

6  "Where are you going with those items?"  Defendant replied

7  that he did not know what items Nani was talking about.

8  Nani called his attention to the items he was carrying and

9  asked, "Where did you get those from?"  Defendant asked if

10  Nani was accusing him of stealing.  Nani said that he had

11  seen defendant come out of the back of the shop, that the

12  items looked familiar to him as shop property, and that he

13  wanted to see inside the items.  Defendant denied taking

14  anything from the shop.

15

16  Bonnie Naruo and Steven Hernandez, another employee, emerged

17  from the shop.  Hernandez definitely recognized the tool set

18  defendant held as one Hernandez frequently used.  The larger

19  case looked like one that held a diagnostic scanner used at

20  the shop.

21

22  Nani shouted to Naruo and Hernandez to call the police.

23  They replied that the police were on their way.  Defendant,

24  still carrying the items, then voluntarily accompanied Nani

25  back to the shop.  A customer, Walter Lesley, saw defendant

26  and Nani enter and walk to the counter area.  Defendant was

27  carrying what appeared to be two tool kits or boxes.

28  ///

3

1   Defendant refused Nani's request to open the items, claiming
2   that the items belonged to him.  At some point, however,
3   they were opened.  Inside the large case was a snap-on
4   diagnostic scanner that Nani and Hernandez recognized as
5   belonging to Foogert's.  Inside the tool box was a sticker
6   that Nani, Hernandez and Naruo recognized as being on the
7   tool set when used by Foogert's technicians.
8
9   Defendant again claimed that the items belonged to him.
10  When told that the police would be called, defendant said,
11  "If you're going to do that, I'll just leave."  Bonnie Naruo
12  called the police, and defendant walked out of the shop,
13  leaving the items on the counter.
14
15  Culver City Police officers detained defendant on Sepulveda
16  Boulevard.  After defendant was placed in the back seat of a
17  patrol car, one of the officers, Albert Casillas, asked if
18  he knew why he was being detained.  Defendant said, "I
19  didn't take anything.  Nobody saw me come out of that place,
20  and I didn't take anything."  He also said that he [sic]
21  tools he left were his, and that he would return and prove
22  it.
23
24  *2 Michael Inscore, the owner of Foogert's, testified that
25  the shop had purchased the scanner in 1997 or 1998.  The
26  model was no longer in production, and he had received an
27  estimate that it would cost approximately $2,495 to replace
28  it with used equipment.  Inscore acquired the tool set when

4

1    he purchased a truck in 2000 or 2001, and the set was under

2    the seat of the truck.  Inscore had never seen defendant

3    before, and had no record of his ever having had his car

4    serviced.

5

6    Defendant, who represented himself at trial, presented no

7    evidence.

8

9    (People v. Mitchell, 2008 WL 4882588, at *1-2).

10

11                        **STANDARD OF REVIEW**

12

13       Under the "Antiterrorism and Effective Death Penalty Act of 1996"

14   ("AEDPA"), a federal court may not grant an application for writ of

15   habeas corpus on behalf of a person in state custody with respect to

16   any claim that was adjudicated on the merits in state court

17   proceedings unless the adjudication of the claim: (1) "resulted in a

18   decision that was contrary to, or involved an unreasonable application

19   of, clearly established Federal law, as determined by the Supreme

20   Court of the United States"; or (2) "resulted in a decision that was

21   based on an unreasonable determination of the facts in light of the

22   evidence presented in the State court proceeding."  28 U.S.C. §

23   2254(d) (as amended); see also Woodford v. Visciotti, 537 U.S. 19, 24-

24   26 (2002); Early v. Packer, 537 U.S. 3, 8 (2002); Williams v. Taylor,

25   529 U.S. 362, 405-09 (2000).

26

27       "Clearly established Federal law" refers to the governing legal

28   principle or principles set forth by the Supreme Court at the time the

                                   5

1  state court renders its decision.  Lockyer v. Andrade, 538 U.S. 63

2  (2003).  A state court's decision is "contrary to" clearly established

3  Federal law if: (1) it applies a rule that contradicts governing

4  Supreme Court law; or (2) it "confronts a set of facts. . . materially

5  indistinguishable" from a decision of the Supreme Court but reaches a

6  different result.  See Early v. Packer, 537 U.S. at 8 (citation

7  omitted); Williams v. Taylor, 529 U.S. at 405-06.

8

9       Under the "unreasonable application prong" of section 2254(d)(1),

10  a federal court may grant habeas relief "based on the application of a

11  governing legal principle to a set of facts different from those of

12  the case in which the principle was announced."  Lockyer v. Andrade,

13  538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti,

14  537 U.S. at 24-26 (state court decision "involves an unreasonable

15  application" of clearly established federal law if it identifies the

16  correct governing Supreme Court law but unreasonably applies the law

17  to the facts).

18

19       A state court's decision "involves an unreasonable application of

20  [Supreme Court] precedent if the state court either unreasonably

21  extends a legal principle from [Supreme Court] precedent to a new

22  context where it should not apply, or unreasonably refuses to extend

23  that principle to a new context where it should apply."  Williams v.

24  Taylor, 529 U.S. at 407 (citation omitted).

25

26       "In order for a federal court to find a state court's application

27  of [Supreme Court] precedent 'unreasonable,' the state court's

28  decision must have been more than incorrect or erroneous."  Wiggins v.

1  <u>Smith</u>, 539 U.S. 510, 520 (2003) (citation omitted).  "The state

2  court's application must have been 'objectively unreasonable.'"  <u>Id.</u>

3  at 520-21 (citation omitted); <u>see also</u> <u>Davis v. Woodford</u>, 384 F.3d

4  628, 637-38 (9th Cir. 2004), <u>cert. dism'd</u>, 545 U.S. 1165 (2005).  In

5  applying these standards, this Court looks to the last reasoned state

6  court decision.  <u>See</u> <u>Delgadillo v. Woodford</u>, 527 F.3d 919, 925 (9th

7  Cir. 2008).

8

9                              **DISCUSSION**

10

11       Despite amendment, Petitioner's pleaded claims remain largely

12  vague and conclusory.  Nevertheless, the Court addresses herein what

13  the Court understands to be Petitioner's principal claims.  For the

14  reasons discussed herein, the Petition should be denied and dismissed

15  with prejudice.[1]

16

17  I.   <u>**Sufficiency of the Evidence**</u>

18

19       Petitioner appears to challenge the sufficiency of the evidence

20  to support his conviction.  Any such challenge lacks merit.

21  ///

22  ///

23  _____

24       [1]    The Court has considered all of Petitioner's
     allegations, including those not specifically referenced herein.
25  None of Petitioner's allegations merit habeas relief.  To the
     extent Petitioner may not have exhausted his state remedies as to
26  some of his allegations, this Court nevertheless may adjudicate
     those allegations.  <u>See</u> 28 U.S.C. § 2254(b)(2); <u>Cassett v.</u>
27  <u>Stewart</u>, 406 F.3d 614, 623-24 (9th Cir. 2005), <u>cert. denied</u>, 546
     U.S. 1172 (2006) (court may deny unexhausted habeas claim on the
28  merits when the claim is not colorable).

1    On habeas corpus, the Court's inquiry into the sufficiency of

2    evidence is limited.   Evidence is sufficient unless the charge was "so

3    totally devoid of evidentiary support as to render [Petitioner's]

4    conviction unconstitutional under the Due Process Clause of the

5    Fourteenth Amendment."  Fish v. Cardwell, 523 F.2d 976, 978 (9th Cir.

6    1975), cert. denied, 423 U.S. 1062 (1976) (citations and quotations

7    omitted).   The evidence is to be considered "in the light most

8    favorable to the prosecution."  McDaniel v. Brown, 130 S. Ct. 665, 673

9    (2010) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979);

10   internal quotations omitted).   A conviction cannot be disturbed unless

11   the Court determines that no "rational trier of fact could have found

12   the essential elements of the crime beyond a reasonable doubt."

13   Jackson v. Virginia, 443 U.S. at 317.

14

15   A reviewing court "faced with a record of historical facts that

16   supports conflicting inferences must presume -- even if it does not

17   affirmatively appear in the record -- that the trier of fact resolved

18   any such conflicts in favor of the prosecution, and must defer to that

19   resolution."  Jackson v. Virginia, 443 U.S. at 326.   "The reviewing

20   court must respect the exclusive province of the fact finder to

21   determine the credibility of witnesses, resolve evidentiary conflicts,

22   and draw reasonable inferences from proven facts."  United States v.

23   Hubbard, 96 F.3d 1223, 1226 (9th Cir. 1996) (citation omitted).

24   "[T]he prosecution need not affirmatively rule out every hypothesis

25   except that of guilt. . . ."  Drayden v. White, 232 F.3d 704, 709 (9th

26   Cir. 2000), cert. denied, 532 U.S. 984 (2001) (citation omitted).

27   This Court cannot grant habeas relief on Petitioner's challenge to the

28   sufficiency of the evidence unless the state court's decision

8

1  constituted an "unreasonable application of" <u>Jackson v. Virginia</u>.

2  <u>See</u> <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274-75 (9th Cir. 2005), <u>cert.</u>

3  <u>denied</u>, 546 U.S. 1137 (2006).

4

5      "Burglary is defined as the entry of a structure with the intent

6  to commit theft or any felony." <u>People v. Moody</u>, 59 Cal. App. 3d 357,

7  363, 131 Cal. Rptr. 923 (1976); <u>see</u> Cal. Penal Code § 459.  A

8  defendant commits burglary when he or she enters a building with the

9  requisite intent, regardless of whether he or she actually commits the

10  underlying felony intended.  <u>See</u> <u>People v. Soto</u>, 53 Cal. 415, 415, 3

11  P.C.L.J. 56 (1879); <u>People v. Sullivan</u>, 271 Cal. App. 2d 531, 543, 77

12  Cal. Rptr. 25 (1969), <u>cert. denied</u>, 396 U.S. 973 (1969).  "Proof of

13  intent is rarely susceptible of direct proof and may be inferred from

14  the circumstances of the case." <u>People v. Moody</u>, 59 Cal. App. 2d at

15  363 (citation omitted); <u>see also</u> <u>People v. Holt</u>, 15 Cal. 4th 619, 669-

16  70, 63 Cal. Rptr. 2d 782, 937 P.2d 213 (1997), <u>cert. denied</u>, 522 U.S.

17  1017 (1997) ("The People must establish that a burglary defendant

18  entered the premises with the intent to commit a felony or theft.

19  Commonly, that intent must be inferred from the circumstances of the

20  charged offense or offenses.") (citations omitted).  The elements of

21  grand theft are the taking of personal property exceeding $400 in

22  value from the owner, "into the possession of the criminal without the

23  consent of the owner or under a claim of right, the asportation of the

24  subject matter, and . . . the specific intent to deprive the owner of

25  his property wholly or permanently.  The requisite intent may be shown

26  circumstantially." <u>People v. Walther</u>, 263 Cal. App. 2d 310, 316, 69

27  Cal. Rptr. 434 (1968); Cal. Penal Code § 487(a); <u>see also</u> <u>People v.</u>

28  <u>Wissenfeld</u>, 36 Cal.2d 758, 763, 227 P.2d 833, 836 (1951) (mere

1  possession of stolen property plus slight corroborative evidence of

2  other inculpatory circumstances, will suffice to support a conviction

3  for theft); CALJIC 2.52 (flight immediately after the commission of a

4  crime may be considered as evidence of consciousness of guilt).

5

6  As plainly reflected in the "Summary of Trial Evidence" above, a

7  rational jury could have found the essential elements of burglary and

8  grand theft beyond a reasonable doubt.  Any refusal by the state

9  courts to overturn Petitioner's conviction on this basis did not

10  constitute an "unreasonable application of" <u>Jackson v. Virginia</u>.[2]

11

12  **II.  <u>Alleged Errors in Connection with the Preliminary Hearing</u>**

13

14  Petitioner appears to challenge various errors allegedly

15  occurring in connection with Petitioner's preliminary hearing.  Any

16  such challenge lacks merit.

17

18  Federal habeas corpus relief may be granted "only on the ground

19  that [Petitioner] is in custody in violation of the Constitution or

20  laws or treaties of the United States."  28 U.S.C. § 2254(a).  Mere

21  errors in the application of state law are not cognizable on federal

22  habeas review.  <u>Id.</u>; <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991)

23  ("it is not the province of a federal habeas court to reexamine state-

24  court determinations on state-law questions"); <u>accord Pulley v.</u>

25  ───────────────────

26       [2]  Contrary to the argument Petitioner appeared to make at
trial, evidence of burglary can be sufficient even without

27  eyewitness evidence of entry.  <u>See, e.g.</u>, <u>Randolph v. Adams</u>, 2006
WL 2032542, at *16 (N.D. Cal. July 18, 2006); <u>State v. Mitchell</u>,

28  593 A.2d 1047, 1049-50 (Me. 1991).

1   Harris, 465 U.S. 37, 41 (1984).

2

3       Petitioner has failed to demonstrate any error of federal law in

4   connection with his preliminary hearing.  Although many states employ

5   preliminary hearings to evaluate probable cause, it is "well settled"

6   "that there is no fundamental right to a preliminary hearing."  Howard

7   v. Cupp, 747 F.2d 510, 510 (9th Cir. 1984), cert. denied, 471 U.S.

8   1021 (1985).  Thus, even the deprivation of a preliminary hearing

9   would not require the vacating of a subsequent conviction.  See

10  Gerstein v. Pugh, 420 U.S. 103, 119 (1975) ("a conviction will not be

11  vacated on the ground that the defendant was detained pending trial

12  without a determination of probable cause"); United States v. Studley,

13  783 F.2d 934, 937 (9th Cir. 1986) (conviction affirmed despite

14  violation of statutory probable cause requirement).  Accordingly, any

15  alleged evidentiary insufficiency at Petitioner's preliminary hearing,

16  or other alleged errors occurring in relation to the preliminary

17  hearing, cannot provide a basis for habeas relief with respect to

18  Petitioner's conviction or sentence.  See, e.g., Colbert v. Yates,

19  2008 WL 942842, *5 (C.D. Cal. Apr. 4, 2008) (claimed inability to

20  cross-examine a witness at the preliminary hearing fails to state a

21  claim cognizable on federal habeas corpus); Hill v. Wolfenbarger, 2005

22  WL 3693204, *4 (E.D. Mich. Nov. 22, 2005) (claim of insufficiency of

23  the evidence at a preliminary examination "raises a matter of state

24  law and cannot form a basis for federal habeas corpus relief"); Fowler

25  v. Leeke, 509 F. Supp. 544, 548 (D.S.C. Sept. 14, 1979) ("the claim

26  that petitioner did not receive a preliminary hearing is not a federal

27  issue").

28  ///

## III. **Alleged Brady Errors**

Petitioner appears to assert that the prosecutor withheld certain evidence from Petitioner, in alleged violation of Brady v. Maryland, 373 U.S. 83, 87 (1963) ("Brady").  The three "essential elements" of a Brady claim are: "The evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; [the] evidence must have been suppressed by the State, either wilfully or inadvertently; and prejudice must have ensued."  Banks v. Dretke, 540 U.S. 668, 691 (2004) (citation and internal quotations omitted). No relief is possible under Brady unless there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  Kyles v. Whitley, 514 U.S. 419, 433 (1995).

Petitioner's Brady claim fails because Petitioner has not demonstrated that the prosecution withheld any evidence having the requisite materiality.  In particular, Petitioner has failed to demonstrate any reasonable probability of a different trial result had the prosecutor disclosed to Petitioner the identity of the photographer who took the pictures introduced into evidence.[3]

---

[3]     Contrary to Petitioner's purported belief, "a photograph need not be identified by the person who took it to be admissible into evidence."  State v. Bates, 397 S.2d 1331, 1335 (La. 1981); see Lohmeier v. Hammer, 214 Ariz. 87, 148 P.3d 101, 105 (Ariz. App. 2006) (witness may lay proper foundation for photograph's admissibility by attesting that the photograph accurately portrays the scene or object depicted, even though the witness was not present when the photograph was taken); Bierra v. State, 232 Ga. App. 622, 627, 502 S.E.2d 542, 547 (Ga. App. 1998)
(continued...)

1  Similarly, even if undisclosed documentation concerning fingerprint

2  testing or communications between witnesses actually existed, the

3  materiality of any such documentation is wholly speculative on the

4  existing record.

5

6  **IV.  Assertedly Knowing Presentation of Allegedly False Evidence**

7

8  Petitioner appears to claim that the prosecutor knowingly

9  introduced assertedly false evidence.  The prosecution's knowing use

10  of false evidence to obtain a conviction can violate due process.

11  Napue v. Illinois, 360 U.S. 264, 269 (1959); see also United States v.

12  Sherlock, 962 F.2d 1349, 1364 (9th Cir. 1989), cert. denied, 506 U.S.

13  958 (1992).  Petitioner appears to rely on apparent inconsistencies

14  between evidence introduced at the preliminary hearing and evidence

15  introduced at trial.

16

17  Petitioner is not entitled to habeas relief on this claim.  "A

18  challenge to evidence through another witness or prior inconsistent

19  statements is insufficient to establish prosecutorial use of false

20  testimony."  United States v. Jordan, 150 F.3d 895, 900 (8th Cir.

21  1998), cert. denied, 526 U.S. 1010 (1999) (citations and quotations

22  omitted); see United States v. Croft, 124 F.3d 1109, 1119 (9th Cir.

23  1997) ("The fact that a witness may have made an earlier inconsistent

24  statement, or that other witnesses have conflicting recollections of

25  events, does not establish that the testimony offered at trial was

26  false"); United States v. Zuno-Arce, 44 F.3d 1420, 1423 (9th Cir.),

27  _____

28  [3](...continued)
(same).

13

1  cert. denied, 516 U.S. 945 (1995) ("discrepancies in the testimony . .

2  . could as easily flow from errors in recollection as from lies";

3  accord Coe v. Bell, 161 F.3d 320, 343 (6th Cir. 1998), cert. denied,

4  528 U.S. 842 (1999) (mere inconsistencies in testimony insufficient to

5  establish constitutional violation); see also United States v.

6  Scheffer, 523 U.S. 303, 313 (1998) ("a fundamental premise of our

7  criminal trial system is that the jury is the lie detector")

8  (citations and quotations omitted); Marshall v. Lonberger, 459 U.S.

9  422, 434 (1983) (matters of credibility ordinarily are not reviewable

10  on habeas corpus).

11

12  **V.   Alleged Vouching**

13

14      Petitioner also appears to allege that the prosecutor engaged in

15  impermissible vouching.  Vouching "consists of placing the prestige of

16  the government behind a witness through personal assurances of the

17  witness' veracity, or suggesting that information not presented to the

18  jury supports the witness' testimony."  United States v. Necoechea,

19  986 F.2d 1273, 1276 (9th Cir. 1993).  No vouching occurred in

20  Petitioner's case.  Neither the portions of the record excerpted in

21  the Petition nor any other parts of the record reflect any vouching by

22  the prosecutor.

23

24      Petitioner appears to claim a violation of his right to

25  confrontation.  Petitioner appears to argue, inter alia, that the

26  prosecutor's failure to identify or to produce the person who took the

27  photographs introduced into evidence somehow violated Petitioner's

28  right to confrontation.  Petitioner is not entitled to habeas relief.

1  Alleged confrontation errors do not merit habeas relief where, as

2  here, the alleged errors failed to have any substantial or injurious

3  effect or influence in determining the jury's verdict.  See Plascencia

4  v. Alameida, 467 F.3d 1190, 1202 (9th Cir. 2006) (applying the

5  harmless error standard of Brecht v. Abrahamson, 507 U.S. 619 (1993));

6  Morales v. Woodford, 388 F.3d 1159, 1180 (9th Cir. 2004), cert.

7  denied, 546 U.S. 935 (2005) (same).

8

9  **VI.  Alleged Judicial Bias or Misconduct**

10

11      Petitioner appears to claim judicial bias or misconduct.  This

12  claim also fails.

13

14      The Due Process Clause guarantees a criminal defendant the right

15  to an impartial judge.  In re Murchison, 349 U.S. 133, 136 (1955).  A

16  defendant is "entitled to a judge who has no direct personal interest

17  in the outcome of a proceeding."  Paradis v. Arave, 20 F.3d 950, 958

18  (9th Cir. 1994), cert. denied, 513 U.S. 1117 (1995).  To succeed on a

19  judicial bias claim, Petitioner must "overcome a presumption of

20  honesty and integrity in those serving as adjudicators."  Withrow v.

21  Larkin, 421 U.S. 35, 47 (1975); see also Ortiz v. Stewart, 149 F.3d

22  923, 938 (9th Cir. 1998), cert. denied, 526 U.S. 1123 (1999).  On

23  habeas corpus review of a state conviction, judicial misconduct will

24  warrant habeas relief only where "the state trial judge's behavior

25  rendered the trial so fundamentally unfair as to violate federal due

26  process under the United States Constitution."  Duckett v. Godinez,

27  67 F.3d 734, 740 (9th Cir. 1995), cert. denied, 517 U.S. 1158 (1996).

28  ///

1      Petitioner fails to allege any facts demonstrating judicial bias.

2  Conclusory allegations unsupported by a statement of specific facts do

3  not warrant habeas relief.  See Jones v. Gomez, 66 F.3d 199, 204-05

4  (9th Cir. 1995), cert. denied, 517 U.S. 1143 (1996); see Blackledge v.

5  Allison, 431 U.S. 63, 75 n.7 (1977) (summary disposition of habeas

6  petition appropriate where allegations are vague or conclusory; "the

7  petition is expected to state facts that point to a real possibility

8  of constitutional error") (citation, internal quotations and brackets

9  omitted).  Petitioner references judicial rulings with which he

10  disagrees, but a judicial ruling "almost never" can demonstrate

11  judicial bias.  Liteky v. United States, 510 U.S. 540, 555 (1994);

12  Ortiz v. Stewart, 149 F.3d at 940 (citation omitted); see also United

13  States v. Bauer, 84 F.3d 1549, 1560 (9th Cir. 1996), cert. denied, 519

14  U.S. 907 (1997), 519 U.S. 1131 (1997), and 519 U.S. 1132 (1997) (a

15  "judge's views on legal issues may not serve as the basis for motions

16  to disqualify"); McCalden v. Calif. Library Ass'n, 955 F.2d 1214, 1225

17  (9th Cir. 1990), cert. denied, 504 U.S. 957 (1992) ("Adverse rulings

18  alone are not sufficient to require recusal, even if the number of

19  such rulings is extraordinarily high.").  Petitioner has not shown

20  that the judge's rulings or comments exhibited bias or misconduct so

21  grave as to violate due process.  See Duckett v. Godinez, 67 F.3d at

22  740-41 (judge's questioning of prosecution witness during direct

23  examination and expressions of "clear frustration and hostility"

24  toward defense witness, when considered in the context of the

25  proceedings as a whole, did not violate due process); see also United

26  States v. Martin, 278 F.3d 988, 996-97, 1005 (9th Cir. 2002) (judge's

27  comments at sentencing hearing that defendant's testimony was

28  incredible and "a crock of baloney" did not warrant recusal); United

1  States v. Wilkerson, 208 F.3d 794, 798-99 (9th Cir. 2000), cert.

2  denied, 531 U.S. 1182 (2001) (judge's suggestion that prosecution add

3  a firearms charge, and judge's remark that the judge represented the

4  "community" and that the "community" was "tired" of armed robbery and

5  guns, did not warrant recusal); see also People v. Guerra, 37 Cal. 4th

6  1067, 1112, 40 Cal. Rptr. 3d 118, 129 P.3d 321 (2006), cert. denied,

7  549 U.S. 1182 (2007) ("a trial court's numerous rulings against a

8  party - even when erroneous - do not establish a charge of judicial

9  bias, especially when they are subject to review") (citations

10 omitted).  This Court has reviewed the record and has discerned no

11 judicial conduct rendering Petitioner's trial "so fundamentally unfair

12 as to violate federal due process . . ."  See Duckett v. Godinez, 67

13 F.3d at 740; see also People v. Fore, 231 A.D.2d 590 (N.Y.A.D.), app.

14 denied, 89 N.Y.2d 864, 675 N.E.2d 1240, 653 N.Y.S.2d 287 (1996)

15 ("there is no prohibition against the same judge conducting a pretrial

16 hearing as well as the trial itself").

17

18 **VII. "Actual Innocence"**

19

20     The Petition cites Schlup v. Delo, 513 U.S. 298 (1995) and

21 references the concept of "actual innocence."  Any "actual innocence"

22 claim would lack merit.

23

24     "To be credible, [a claim of actual innocence] requires

25 petitioner to support his allegations of constitutional error with new

26 reliable evidence - whether it be exculpatory scientific evidence,

27 trustworthy eyewitness accounts, or critical physical evidence - that

28 was not presented at trial.  Because such evidence is obviously

17

1  unavailable in the vast majority of cases, claims of actual innocence

2  are rarely successful." <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995)

3  (emphasis added); <u>see also</u> <u>House v. Bell</u>, 547 U.S. 518, 536-37 (2006)

4  (discussing same).  A petitioner "must show that it is more likely

5  than not that no reasonable juror would have convicted him in light of

6  the new evidence." <u>Schlup v. Delo</u>, 513 U.S. at 327.

7

8          Petitioner essentially presents only the same allegations the

9  jury rejected at trial.  Accordingly, Petitioner has not made a

10  credible claim of actual innocence. <u>Baran v. Hill</u>, 2010 WL 466153, at

11  *7 (D. Or. Feb. 9, 2010) (finding that petitioner's self-serving and

12  unsupported statements were not "new and reliable" evidence sufficient

13  to prove actual innocence); <u>McArdle v. Sniff</u>, 2009 WL 1097324, at *5

14  (C.D. Cal. Apr. 20, 2009) (same).  Moreover, even if Petitioner's

15  evidence were sufficiently "new and reliable" to establish a credible

16  claim under <u>Schlup</u>, the United States Supreme Court has never

17  recognized a freestanding claim of actual innocence based on newly

18  discovered evidence in a non-capital case.  "Claims of actual

19  innocence based on newly discovered evidence have never been held to

20  state a ground for federal habeas relief absent an independent

21  constitutional violation in the underlying state proceeding." <u>Herrera</u>

22  <u>v. Collins</u>, 506 U.S. 390, 400 (1993); <u>see</u> <u>District Attorney's Office</u>

23  <u>v. Osborne</u>, 129 S. Ct. 2308, 2321 (2009) (whether there exists a

24  "federal constitutional right to be released upon proof of 'actual

25  innocence'" is "an open question"); <u>House v. Bell</u>, 547 U.S. at 554-56

26  (declining to decide whether federal habeas courts may consider a

27  freestanding actual innocence claim in capital case).  Thus,

28  Petitioner's claim of actual innocence cannot warrant federal habeas

1  relief.   See 28 U.S.C. § 2254(d).

2

3                              **CONCLUSION**

4

5      Petitioner's claims fail as a matter of law.   Consequently, the

6  state courts' rejection of Petitioner's claims was not contrary to or

7  an unreasonable application of clearly established United States

8  Supreme Court law, or an unreasonable determination of the facts in

9  light of the evidence presented in the state court proceedings.   See

10  28 U.S.C. § 2254(d)(2).   Petitioner is not entitled to federal habeas

11  relief.

12

13                            **RECOMMENDATION**

14

15      For the reasons discussed above, IT IS RECOMMENDED that the Court

16  issue an order: (1) approving and adopting this Report and

17  Recommendation; and (2) denying and dismissing the Petition with

18  prejudice.

19

20          DATED: July 9, 2010.

21

22                              _____/S/_____

23                              CHARLES F. EICK
                                UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.

If the District Judge enters judgment adverse to Petitioner, the District Judge will, at the same time, issue or deny a certificate of appealability.  Within twenty (20) days of the filing of this Report and Recommendation, the parties may file written arguments regarding whether a certificate of appealability should issue.